**Date Signed:**
**January 31, 2014**



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>GOKO RESTAURANT<br>ENTERPRISES LLC,<br><br>        Debtor. | Case No. 13-00554<br>Chapter 7<br><br><br>Re: Docket No. 226, 211 |

## MEMORANDUM OF DECISION ON EXTENT OF SECURED CLAIM

    The estate holds sales proceeds in which a creditor asserts a security interest. This decision resolves a dispute between the chapter 7 trustee and the creditor about the value of the creditor's interest in those proceeds.

    The debtor ("GoKo") operated restaurants at four locations. When GoKo filed its chapter 11 petition, GoKo operated the restaurants as a franchisee of the Sizzler chain. Soon after the filing, GoKo terminated the franchise and began operating the restaurants under its own name.

    GoKo agreed to sell its Aikahi restaurant for a gross sale price of

$145,000.00. The assets to be sold were GoKo's leasehold interest in the restaurant premises, the furniture, fixtures, equipment, cookware, and related items located at the restaurant, the applicable liquor license, and certain records and intangibles. Dkt. 113-4 at 1-2.

Before the sale motion could be heard, GoKo ran out of money to pay its rents and other expenses. It ceased all of its operations, closed all of the restaurants, and successfully moved to convert its case to chapter 7. Dkt. 140, 152.

The chapter 7 trustee elected to proceed with the Aikahi sale, the court approved it (dkt. 169), and the sale closed. After delinquent lease rent, sales expenses, and similar items were paid, there remained net proceeds of $85,991.53.

Santander Bank ("Santander") holds a perfected security interest in certain of GoKo's assets to secure a loan in the original principal amount of $900,000.00. Santander contends that the unpaid principal amount of the loan as of the petition date was $454,054.25.

Santander has a valid and perfected security interest in "all furniture, fixtures and equipment now owned or hereafter acquired, held or used by [GoKo] in the operation of a Sizzler restaurant at [the Aikahi location, among others], together with all additions to, substitutions for and replacements therefor, and all proceeds

2

of the foregoing, cash and non-cash, including, without limitation, insurance proceeds and general intangibles." Claim 3-3 at 18, 35. (For convenience, I will refer to Santander's collateral as the "FF&E"). Santander does not have an interest in GoKo's leasehold interest in the land and building. The trustee does not challenge the validity or perfection of Santander's security interest.

In the meantime, the trustee has liquidated the estate's personal property at the other three restaurants and paid all of the net proceeds ($29,983.14) to Santander.

The parties agree on the legal principle that Santander is entitled to receive that portion of the sale proceeds that are the proceeds of its collateral. They do not agree, however, on what portion of the proceeds is attributable to the FF&E, which is subject to Santander's security interest, and what portion is attributable to the leasehold, which is not. This is a question of fact which would ordinarily require an evidentiary hearing. Both parties have agreed, however, to waive an evidentiary hearing and have asked me to decide the issue on the existing paper record.

Santander argues that it should receive all of the net proceeds of the Aikahi sale.

First, Santander points out that, in its bankruptcy schedules, GoKo valued the FF&E in all of its locations at $188,934, and that the trustee repeated this figure

3

in her interim reports. I am not persuaded by this argument. The schedules state that the listed values were based on "net book value," meaning acquisition cost less depreciation. Book value and fair market value often do not coincide. Further, the schedules do not distinguish the FF&E at Aikahi from the FF&E at other locations, so the schedules do not answer the question presented. The trustee probably used the debtor's figure because she lacked better information at the time.

Second, Santander claims that the debtor represented that Santander would receive all of the net proceeds of the Aikahi sale. This misreads the debtor's communications; the debtor never conceded that Santander would get all of the proceeds. Dkt. 225-3 at 1-12. When Santander specifically asked whether Santander would get all of the proceeds, the debtor's counsel provided an estimated closing statement but did not respond to the specific question. *Id*. at 7-8. Even if the debtor made that representation, it would not be binding on the trustee or the estate because the court never approved it.

Third, Santander argues that the trustee's argument is a collateral attack on the order approving the sale. I disagree. The order did not determine the extent of Santander's security interest. To the contrary, it reserved that question, by stating that all liens on the assets, "to the extent valid," would attach to the proceeds. Because Santander consented to the sale (by failing to object to the motion), no

4

inquiry into the scope of Santander's interests was necessary. Bankruptcy Code § 363(f)(2).

Fourth, Santander argues that the FF&E had significant value because the Aikahi restaurant was sold as a going concern. The term "going concern" does not apply exactly to this sale. By the time the motion for approval of the sale came on for hearing, the debtor had shut down the restaurant, so there was no going concern in the sense of an operating business. Further, the buyer intended to operate a different kind of restaurant from the debtor's; there is no evidence, and no reason to believe, that the buyer got a quantifiable benefit from the fact that a different restaurant had previously operated (and failed) in the same location. It would be more accurate to say that the FF&E was sold in place. This could have value to a buyer who wanted that FF&E and would not have to incur the costs of removal and relocation. It does not mean, however, that all of the sale proceeds should go to Santander.

Fifth, Santander offers the declaration of an expert who opines that the FF&E at the Aikahi location would be worth $53,522.00 under normal market conditions. (The expert also provided higher value estimates based on a comparison of what it would likely cost to outfit a kitchen of the size at the Aikahi location. The estimate of $53,222.00 is based on his inspection and valuation of

5

the specific items sold at the Aikahi location, and I find that method and valuation more relevant to this sale than his other methods.) The problem with this appraisal is that this sale was not made under normal market conditions. When GoKo negotiated the sale, it was already in distress. GoKo was in bankruptcy and it stated publicly that the Aikahi location was not profitable. Before the sale proposal even came before the court, GoKo had run out of cash and closed its doors. Because GoKo was under extreme financial pressure, this sale was not under normal market conditions.

Sixth, Santander points out that the asset purchase agreement provides that:

The purchase price shall be allocated as follows:

> Asset Price
> Building;
> Furniture, Fixtures and Equipment (including tables); and
> Personal Property
>
> Total:      $145,000

Dkt. 113-4 at 2-3. Santander reads this provision as allocating all of the purchase price to the FF&E. I disagree. The agreement defines the "Building" as "all improvements built upon the demising [sic] premises described in . . . the Lease." Dkt. 113-4 at 2. As a matter of black letter law, a building is part of the real estate on which it is built. GoKo's lease confirms that the building was part of the realty

U.S. Bankruptcy Court - Hawaii   #13-00554   Dkt # 242   Filed 01/31/14   Page 6 of 10

and that GoKo has only a leasehold interest in it; under the lease (dkt. 113-1 at 14), GoKo was obligated to turn the building over to the landlord upon the expiration of the lease. In other words, the list of assets includes items in which Santander has a security interest ("Furniture, Fixtures and Equipment (including tables); and Personal Property") and an item which is not subject to Santander's security interest (the Building), and the list does not allocate the purchase price between those categories. The contractual purchase price allocation therefore does not shed any light on this question.

The trustee argues that the FF&E was worth only $5,000 to $6,000. She offers two pieces of evidence in support.

First, she offers the declaration of an expert appraiser who opines that the gross sales proceeds of the Aikahi FF&E would be $10,000 to $13,000 if the buyer were an incoming tenant, $5,000 to $6,000 if the buyer were a wholesale dealer or bulk buyer, or $3,000 to $4,000 if the FF&E were sold in a one-day auction. Santander correctly points out that the same expert said that the FF&E at the debtor's other locations would bring $13,000 to $18,000 at a one-day auction, but when those assets were actually sold (under adverse conditions), the gross proceeds were $39,380, more than double the expert's estimate. This observation decreases the weight of the expert's testimony concerning the Aikahi FF&E.

7

U.S. Bankruptcy Court - Hawaii    #13-00554    Dkt # 242    Filed 01/31/14    Page 7 of 10

Second, the trustee offers the declaration of a principal of the buyer. He testifies that, from the buyer's perspective, "the shopping center lease and the building [were] the most significant assets included in the purchase," that the FF&E was old and "of very little value" to the buyer, and that the buyer planned to renovate the interior and exterior of the restaurant and replace "all but a small portion" of the FF&E. I find this testimony convincing. The buyer has no stake in the outcome of the dispute between the trustee and Santander and therefore has no motive to shade or slant its testimony. Further, the testimony of a buyer, which has put its money where its (metaphorical) mouth is, is often more persuasive than that of an expert.

Santander contends that this testimony is inconsistent with the purchase price allocation provision of the sale agreement. As is explained above, however, that provision is consistent with the buyer's testimony.

Santander also argues that the lease could not have been important because the buyer renegotiated the rent with the landlord. This does not follow. The lease was still beneficial to the buyer because it gave the buyer the right to require the landlord to negotiate with it and created a logical starting point for that negotiation.

Finally, Santander criticizes the trustee for not offering an appraisal of the lease. Of course, Santander could have offered such an appraisal but it also failed

8

to do so.  More to the point, the value of the lease is not directly in issue; the value of the FF&E is the relevant question, and the trustee has presented evidence on that point.

Santander argues that the added value created by the presence of a fully equipped kitchen is a "premium" which should go to Santander.  There is no evidence that such a premium was paid in this case.  The buyer's testimony makes it clear that, in this case, the FF&E was not critical to the sale and did not create a "premium."

Considering all of the evidence and giving it the weight that I think appropriate, I find that the FF&E was worth $25,000.  This figure is less than the value opinion of Santander's expert because his opinion assumed a sale under normal market conditions and, as stated above, this was not such a sale.  My figure is higher than that given by the trustee's expert but is consistent with the difference between the expert's estimate of the value of the FF&E in GoKo's other locations and what that other FF&E actually brought when sold.  My figure is also broadly consistent with the buyer's testimony that the lease and building were the most important assets in the sale.

Accordingly, the trustee's objection to Santander's claim (dkt. 211) and Santander's motion for distribution (dkt. 226) are both granted in part and denied in

9

part. The value of Santander's interest in the proceeds of sale of the Aikahi location is $25,000.00. The trustee is authorized and directed to disburse the same to Santander promptly after February 15, 2014 (which is two weeks after the deadline for filing administrative claims) unless the trustee files and serves, on or before February 15, 2014, a motion to surcharge Santander's collateral under Bankruptcy Code § 506(c). In all other respects, the objection is overruled and the motion is denied.